ABIGAIL BIGELOW, Administratrix of HENRY BIGELOW, v. The CONGREGATIONAL SOCIETY of Middletown.

## (In Chancery.)

Questions determined by this court, as a court of chancery, before the revised statutes were in operation, are not to be reëxamined on an appeal from the chancellor.

The report of a master on matters of fact, is to be accepted, unless it plainly appear that he mistook the law or the evidence.

Chancery will, in some cases, to prevent a failure of justice, decree against the individual members of a society, incorporated under the statute for the support of the gospel.

FROM the bill and answers, in this case, it appeared that, for a long time previous to his decease in 1832, the intestate had been settled as a minister over the Congregational Society in Middletown, and that, at the time of his decease, the society was indebted to him in a large amount, for his services ; that, upon the presentatation to the commissioners on his estate, of a claim of the society against him, as their treasurer, his claim was presented in off-set, and a balance allowed, in favor of the estate, by the commissioners, which allowance was confirmed, upon an appeal, and a final judgment was rendered against said society, for $1,333.94 damages, and $147.60 cost.

It also appeared that, at the decease of the intestate, the available funds of the society, consisting principally of notes for money loaned, amounted to about $1,500, which notes, subsequently, went into the hands of members of the society ; and that in January, 1834, a new society was formed, by which a minister was employed, who was paid from the said funds, whereby they became much diminished.

The bill was brought to obtain a discovery of the persons

composing the society, at the decease of the intestate—a
decree against them for the payment of said judgment—and
the appointment of a receiver of the funds and property of
the society, to be appropriated towards such payment.

RUTLAND,
*February,*
1843.

Adm'x of
Bigelow
*v.*
Cong. Soc. of
Middletown.

Upon the hearing of the case, at the January term, 1839,
of the supreme court, sitting as a court of chancery, (see 11
Vt. R. 283,) it was decided that the oratrix had a just claim
to have all the funds, existing at the death of the intestate, or
so much thereof as should be necessary for the purpose,
appropriated to the payment of said judgment; and that the
individual members of the society at that time, who could
control the same, were responsible that they should be so
applied; and, thereupon, the court decreed that a receiver
be appointed to receive and collect whatever might remain
of the funds, and apply the same, or so much thereof, as
might be necessary for the purpose, to the payment of said
judgment; and that it be referred to a master, to ascertain
the situation of the funds in June, 1832, at the decease of the
intestate, and who were members of the society at that time.

The receiver, appointed in pursuance of said decree,
made report to the chancellor for the first judicial district,
that the sum of $642.99, after deducting the costs and char-
ges of the receiver, was the whole that he found good and
collectable of the said demands; and that he had collected
the same and paid it over to the oratrix; which report was
accepted.

The master, appointed in pursuance of the decree, reported
that he found that, at the decease of the intestate, the funds
of the society that were good and collectable, amounted to
the sum of $1,567.21. He also reported the names of
twenty-five individuals who were members of the society at
the decease of the intestate, of whom three had subsequently
removed from Middletown, and two others had deceased.

The master also reported the following facts at the request
of the parties:

That, in 1791, a congregational society was formed in
Middletown, whose articles of association provided that, in
case said articles should be altered, no one should be holden
without signing the altered constitution; that, in May, 1804,
the constitution was revised; and again revised in 1809;
that the last revision declared the former constitution null

Rutland,
February,
1843.

Adm'x of
Bigelow
*v.*
Cong. Soc. of
Middletown.

and void, and provided that, " if any should die, or become a member of any other religious denomination, or remove to a greater distance than ten miles from the meeting-house, in either case, his right of membership should discontinue "; that in 1815, the society adopted the form of association prescribed by the statute of Nov. 10, 1814, entitled, ' an act in addition to an act for the support of the gospel,' and that the names of fifteen individuals (named by the master, and part of the said twenty-five, reported as belonging to the society at the decease of the intestate) were subscribed to the same, previous to the said decease, and all in the hand writing of one of the number ; that four others of the said twenty-five signed the constitution of 1809, and did not sign the articles of 1815, until after the decease of the intestate, but continued to act as members of the society ; that six others of the twenty-five, also signed the constitution of 1809, and had never signed the articles of 1815, but had acted as members of the society until the decease of the intestate ; and that, in 1822, the society recognized the constitution of 1809 as the then existing constitution, by amending the same.

The master further reported that Jonathan Morgan, (not one of those reported by him, as members of the society in 1832) signed the revised constitution of 1809 ; that his name was attached to the articles of association of 1815, but not in his handwriting ; that he continued to act as a member of the society until about 1824, when, in consequence of a difficulty with Mr. Bigelow, he left the society, and went with the baptist society in Middletown, and never acted with the congregational society afterwards, but was considered as separate from it, and refused to act as one of a committee of the society, though appointed as such in 1825, and in 1828, and attended the baptist meeting and paid to that society.

Upon the coming in of this report, the defendants excepted to the same upon the following grounds,—

1. That the association of 1809 was, in no way, connected with the association, under the statute in 1815 :—

2. That if the articles of association adopted in 1809, were to govern, or vary those of 1815, there was no fact stated in the report, by which Jonathan Morgan could be considered as having been discharged from being a member of the society at the time of Mr. Bigelow's death, in 1832.

Rutland,
February,
1843.

Adm'x of
Bigelow
*v.*
Cong. Soc. of
Middletown.

3. That by the association of 1815, under the statute, and by that only, the society were made a corporation ; and individuals never were, or could be, by the terms of the statute, members of it, until they had subscribed the articles of association, and, therefore, those who did not subscribe those articles until after the decease of the intestate, were not, at that time, members of the society, although they might have occasionally acted with it.

4. That when the society organized, in 1815, all previous organizations must, necessarily, have been abandoned.

The chancellor overruled the exceptions, and, thereupon, decreed, that certain individuals—being those reported by the master to have been members of the society at the decease of the intestate, with the exception of those reported by him to have subsequently deceased, and to have removed from Middletown—should pay to the clerk, for the benefit of the oratrix, the sum of $1,399.16, and her costs.

From this decree the defendants appealed.

*J. Clark*, for defendants.

*E. L. Ormsbee*, for oratrix.

The opinion of the court was delivered by

Williams, Ch. J.—This case was before this court, sitting as a court of chancery, before the Revised Statutes went into operation. Any questions then settled, are not to be re-examined on an appeal from the chancellor, if he has followed the principles settled in the cause. The defendants were a corporation of an anomalous nature. The members were fluctuating, and not like owners of stock. The court, having the corporation before them, had, also, the individual members, (several of whom appeared and answered)and were under the necessity, in the language of Lord Eldon, in the case of *Adley* v. *Whitstable Co.*, 17 Vesey, 324, to deal with them the best way we could to prevent a failure of justice. If, by resisting the demands of justice, they exposed their property to ruin, the mischievous consequences must be attributed to themselves.

The defendants made a claim against the estate of Bigelow, and after a long and tedious suit at law, they were found indebted to him, at the time of his death. They had a fund amply sufficient to meet the debt due to Mr. Bigelow,

Rutland,
*February,*
1843.

which they should have applied in payment. If they have suffered it to be wasted or expended in fruitless endeavors to resist the claim of the intestate, both at law and in chancery, the plaintiff is not to be further burthened with expense, or experience any further difficulty, in consequence of any controversy among themselves, or any difficulty of settling their individual liabilities.

The master was directed to inquire after, and ascertain certain facts, and make his report thereon. We do not perceive that he has made any errors, or arrived at any wrong conclusions, on the facts he was directed to ascertain and report.

From the report of the master, it appears that Jonathan Morgan was not a member of the society, after the year 1824 ; and was not one on whom the decree was to operate. We do not, therefore, think proper to alter the decree of the chancellor so as to include him, but merely to say it should be without prejudice to any claims the defendants may hereafter wish to establish against him.

The decree of the chancellor is affirmed with additional cost against the surviving members ; and no cost is allowed to any of the persons named in the bill, who were not found to be members of the society at the decease of Mr. Bigelow. And the chancellor will be directed to carry the decree into execution.